IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| V. | § | CRIMINAL ACTION NO. H-05-245 |
| | § | CIVIL ACTION NO. H-08-984 |
| LARRY SHOTONWA, | § | |
| | § | |
| Defendant-Movant | § | |

**MEMORANDUM AND RECOMMENDATION**

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C.

§ 2255 is Movant Larry Shotonwa's § 2255 Motion to Vacate, Set Aside or Correct Sentence

(Document No. 56),[1] Memorandum in Support (Document No. 58), and Affidavit (Document No.

59), the United States' Answer,  and Motion to Dismiss (Document No. 64), and Movant's Response

to the United States' Motion to Dismiss (Document No. 65).  After reviewing Movant's § 2255

Motion, Memorandum and Affidavit, the Government's Answer and Motion to Dismiss, the record

of the proceedings before the District Court in the underlying criminal case, and the applicable law,

the Magistrate Judge RECOMMENDS, for the reasons set forth below, that the Government's

Motion to Dismiss (Document No. 64) be GRANTED, that Movant's Motion to Vacate, Set Aside,

or Correct Sentence (Document No. 56) be DENIED, and that this § 2255 proceeding be

DISMISSED.

---

[1]  Larry Shotonwa's Motion to Vacate, Set Aside or Correct Sentence can be found at
Document No. 1 in Civil Action H-08-984  and at Document No. 56 in Criminal Action No. H-05-
245.  References hereafter will be to the Criminal Document numbers unless otherwise indicated.

## I.      Procedural History

Movant Larry Shotonwa ("Shotonwa"), who is currently in the custody of the United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C. § 2255.  This is Shotonwa's first attempt at § 2255 relief.

On June 7, 2005, Shotonwa was charged by Indictment with fraud in connection with access devices in violation of 18 U.S.C. §§ 1029(a)(3) and 2 (Count one), fraud in connection with access devices in violation of 18 U.S.C. §§ 1029(a)(2) and 2 (Count two), fraud in connection with identification information in violation of 18 U.S.C. §§ 1028(a)(7) and 2 (Count three), and aggravated identify theft in violation of 18 U.S.C. §§ 1028A and 2 (Count four).  (Document No. 11).  On September 16, 2005, Shotonwa, pursuant to a written plea agreement, pleaded guilty to Counts two and four of the Indictment.  (Document Nos. 22, 23 and Transcript of Rearraignment Hearing, Document No. 49).  Under the written plea agreement pursuant to Rule 11(c)(1)(A) and (B),  Shotonwa agreed to plead guilty to Counts 2 and 4 and to waive his rights to appeal and collaterally attack his conviction.  The Government agreed to: (1) dismiss the remaining counts of the Indictment, (2) not oppose Shotonwa receiving credit for acceptance of responsibility (3) recommend an intended loss figure of less than $400,000.00, and (4) not request an upward departure. (Document No. 23 and Transcript of Rearraignment, Document No. 49, p. 4). With respect to the waiver of appeal rights, including the right to bring a § 2255 motion, and the calculation of Shotonwa's sentence, the written plea agreement provides in pertinent part:

> 11.   The defendant understands that the sentence to be imposed is within the discretion of the sentencing judge.  If the Court should impose any sentence up to the maximum established by statute, the defendant cannot, for that reason alone,

withdraw his guilty plea and will remain bound to fulfill all of the obligations under this plea agreement.

12.   The defendant is aware that the defendant's sentence will be imposed in accordance with the USSCGM, the conditions of which are not mandatory but are advisory to the Court.  The defendant nonetheless acknowledges and agrees that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for the offense to which the defendant pleads guilty.  The defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed.  **Knowing that, the defendant waives the right to appeal the sentence or the manner in which it was determined on the grounds set forth in Title 18, United States Code, Section 3742 except only that he may appeal any upward departure from the USSCGM** not requested by the United States.  This agreement does not affect the rights or obligations of the United States as set forth in Title 18, United States Code, Section 3742(b).

13.   The defendant is also aware that the United States Constitution and the laws of the United States, including Title 28, United States Code, Section 2255, afford a defendant the right to contest or "collaterally attack" [his] conviction or sentence after [his] conviction has become final.  **Knowing that, the defendant waives his right to contest or collaterally attack his conviction or sentence by means of any post-conviction proceeding.**

14.   In agreeing to waive his right to appeal [his] sentence or collaterally attack his conviction or sentence, the defendant is aware that a sentence has not yet been determined by the Court.  **The defendant is also aware that any estimate of the probable sentencing range under the sentencing guidelines that the defendant may have received from the defendant's counsel, the United States or the Probation Office, is a prediction, not a promise, and is not binding on the United States, the Probation Office or the Clerk.**  The United States does not make any promise or representation concerning what sentence the defendant will receive.  Realizing the uncertainty in estimating what sentence the defendant will ultimately receive, **in exchange for the concessions made by the United States in this plea agreement, the defendant knowingly waives the right to contest his conviction or sentence by means of a post-conviction proceeding, and he knowingly waives the right to appeal the sentence except to the extent set out above.**  (Document No. 23, pp. 7-9) (emphasis in original).

In addition, Shotonwa and his attorney, David Cunningham, executed an addendum to the written

Plea Agreement, which states in pertinent part:

I have consulted with my counsel and fully understand all my rights with respect to the indictment pending against me. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the <u>Sentencing Guidelines and Policy Statements</u> which may apply in my case. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this agreement and I voluntarily agree to it.

I have fully explained to the defendant [his] rights with respect to the pending Indictment. Further, I have reviewed the provisions of the <u>United States Sentencing Commission Guidelines Manual</u> and I have fully explained to the defendant the provisions of those Guidelines which may apply in this case. I have carefully reviewed every part of this plea agreement with the defendant. To my knowledge, the defendant's decision to enter into this agreement is an informed and voluntary one. (Document No. 23).

At Shotonwa's September 16, 2006, Rearraignment, the Court engaged in an extended colloquy with Shotonwa to ensure that he had read the written Plea Agreement and had conferred with his attorney about the contents of the Plea Agreement. The Court also advised Shotonwa of the consequences of his plea, including the maximum sentence he faced, the manner in which his sentence would be calculated, the factual basis of the plea, and the waiver provisions:

The Court: And do you understand that today I will not know what your sentence will be?

The Defendant: Yes, your Honor.

The Court: And I won't know about your sentence until after a probation officer has done an investigation of your case and has written a presentence report that will assist me in sentencing.

The Defendant: Yes, your Honor.

The Court: And that is because although the sentencing guidelines are now – are no longer mandatory but only advisory, I am still required to consider the guidelines when I determine – as advisory, of course, when I determine what your sentence will be. Do you understand that?

The Defendant: Yes, your Honor.

The Court:  And after the presentence report has been written by the probation officer, you and Mr. Cunningham will get a copy of it.  Mr. Hileman will also get a copy of it.  And each of you will be given an opportunity to make any objections you may have to the presentence report.  We will then have a sentencing hearing.  And at that hearing I will rule on any objections that may be made to the presentencing report.  I will also rule on any motions that are made, recommendations that are made, or any other matters that are brought to my attention that might have an impact on the sentence you receive.  Do you understand that?

The Defendant: Yes, your Honor.

The Court:  And then at the conclusion of that sentencing hearing, I will then be in a position to determine what your sentence is.  Do you understand that?

The Defendant: Yes, your Honor.

The Court:  And it could be when I pronounce sentence, I give you a sentence that is more severe than the one that you and Mr. Cunningham may have estimated you might get when you were talking about how the guidelines might apply in your case.  Do you understand that?

The Defendant: Yes, your Honor.

The Court:  And if that should happen, if your sentence is more severe than the one you're expecting, do you understand you will not be given a chance to withdraw your plea of guilty?

The Defendant: Yes, your Honor.

The Court:  All right.  Do you also understand that after your guideline range has been determined, under some circumstances the Court would have the authority to depart from the guidelines and to impose a sentence that is either more severe or less severe than the sentence called for by the guidelines?  Do you understand that?

The Defendant:  Yes, your Honor.

The Court:  And do you also understand that in the federal system parole has been abolished and that if you were sentenced to prison, you will not be released on parole?

The Defendant:  Yes, your Honor.

The Court:  All right.  Do you also understand that under some circumstances you or the government would have the right to appeal any sentence that I impose?

The Defendant:  Yes, your Honor.

The Court:  But do you further understand that under the written plea agreement that you propose to enter into this morning, you will be waiving or giving up all your rights to appeal any sentence or make any collateral attack, such as a habeas corpus on any — based on any sentence that I impose?  Do you understand that?

The Defendant:  Yes, your Honor.

                          *                                    *

The Court:  All right.  Mr. Hileman, tell me what it is the government is prepared to prove if we went to trial in this case.

Mr. Hileman:  Yes, your Honor.  The United States would show that the United States postal inspectors executed a search warrant at the defendant's apartment located at 10200 Forum, No. 60, in Houston, Texas, on April 6th of this year.

The defendant presented a fraudulently obtained Ohio's driver's license in the name of Mitchell Jones when approached by agents.

Postal inspectors found numerous credit cards and credit card statements of others in the defendant's apartment.  These credits had been fraudulently obtained by using the means of identifications of others, without their permission, to apply for the credit cards.  Charges of more than $100,000 had been made within a one-year period using the credit cards in the names of John Stewart; Kelley Scarzafava, S-c-a-r-z-a-f-a-v-a; Denise and Jule Carr; and Letitia Rayburn, L-e-t-i-t-i-a.  These transactions had affected interstate commerce.

In addition to the possession of the Ohio driver's license, the defendant possessed credit profiles for numerous individuals containing their names, dates of birth, and Social Security numbers for the purpose of carrying out this scheme.  That would be a brief summary the United States would prove at trial, your Honor.

                          *                                    *

The Defendant:  That what I do?

The Court:  Yes, what did you commit– you're pleading guilty to two counts.  What did you do to commit those two crimes?

The Defendant:  I participated in the crime, you know.

6

          \*                               \*

The Court:  And the plea agreement contains a statement of what the facts– a stipulated factual basis.  In other words, by signing this plea agreement, you will be agreeing to those stipulated facts.

The Defendant:  What I do in this crime is that I took some money off the card as cash advance, that's all I do.

The Court:  Okay.

The Defendant:  That's it.

The Court:  Well, you've read this plea agreement, correct?

The Defendant:  Yes.

The Court:  And on page 12 through 13–I'm sorry.  Actually I think it's just on page 12, there's a stipulated factual basis.  Take a glance at that and tell me if that is exactly what it is you pled guilty– or you agree that you did.

The Defendant:  Yes, I used — I used those credit cards of the name on – in this page, yes, I did that.  (Document No. 49, Transcript of Rearraignment hearing, pp. 9-11, 14-15, 17-18).

Prior to sentencing, a pre-sentence investigation report ("PSR")  was prepared to which Shotonwa filed written objections.[2]  (Document No. 30).  In addition, the Government filed a Motion for Downward Departure for Substantial Assistance to Authorities.  (Document No. 29).  In that motion, the Government argued that Shotonwa should be given a downward departure under

---

    [2] Shotonwa objected (Document No. 30) to several sections of the PSR including paragraphs 14-17, which addressed the loss computations.  The PSR estimated that the loss attributable to Shotonwa's actions was $464,560.19.  According to Shotonwa, he should have been held accountable for a loss of less than $400,000.  This loss amount would have reduced his offense level to a level 16, and with a criminal history of category IV, would have resulted in a guideline range of 46-57 months.  In addition, Shotonwa requested that the Court grant the Government's § 5K1.1 Motion.

U.S.S.G. § 5K1.1 based on his cooperation.  With respect to Shotonwa's cooperation/assistance, the

motion states:

> When Shotonwa was arrested he was found to be in possession of credit card and
> financial information that had been stolen from the United States Mails.  Shotonwa
> told investigators that he received this information from a United States Postal
> Service Employee that was also involved in credit card fraud and identify theft.
> Shotonwa identified the employee and Postal Inspectors began an investigation of the
> employee.  That investigation is almost complete and will certainly lead to federal
> charges being pursued against the employee.  (Document No. 29).

Pursuant to the PSR, Shotonwa's guideline sentencing range was calculated as follows:  (1)

Shotonwa had a base offense level of 6.  (2) Because Shotonwa was accountable for a loss of

$464,560.19,[3]  his offense level was increased by 14 levels. (3)   Because Shotonwa accepted

---

[3] With respect to the loss calculation, the PSR states:

14.   During the course of the investigation into Shotonwa's activities, additional
fraudulent accounts were identified by the case agent.  For the purposes of relevant
conduct, on each of the researched accounts, Shotonwa will be held to the greater of
the actual loss or the intended loss, which is the credit limit for each account.  The
estimated losses for which Shotonwa will be held accountable are as follows:

1.  22 credit cards, with a total intended loss of $262,000;

2.  16 accounts for which Shotonwa had multiple credit card convenience
checks and/or used checks to make payments toward other accounts, with a total
intended loss of $145,850;

3.  4 United States Treasury checks totaling $3,710.19; and

4.  6 accounts for which Shotonwa had various types of correspondence
regarding account information, including pre-approved credit card applications and
car mailings, with a total intended /actual loss of $53,000.

15.  According to the case agent, approximately eight credit profiles were found in the
defendant's possession.  The case agent indicated when Shotonwa submitted pre-
approved credit card applications to credit card companies, he used true identifiers of
the identity theft victims, i.e., Social Security Numbers and dates of birth, when
completing the applications.  The case agent stated it is not known how Shotonwa

responsibility for his actions and did so in a timely manner, pursuant to U.S.S.G. § 3E1.1(a) and (b),

his offense level was reduced by three levels. (4) With an adjusted base offense level of 17, and with

a criminal history of category VI, Shotonwa had a guideline sentence range of 51 to 63 months.

On June 9, 2006, Judge Harmon denied the Government's Motion for Downward Departure,

and with respect to Shotonwa's objections to the PSR regarding the loss computation, Judge Harmon

adopted the PSR's findings concerning the amount of loss:

> The Court: All right. Mr. Cunningham has filed an objection to the report and we're going to – I'm going to be talking to him about that in just a minute, but I want to find out from you if you have any objections that you would like to make to the report that were not made on your behalf by Mr. Cunningham.
>
> The Defendant: No. No, your Honor.
>
> The Court: All right. Mr. Cunningham, you have objected to the loss computation?
>
> Mr. Cunningham: I have, your Honor. It's pretty clear what I'm asking for in my objections. Two things: First of all, the PSR states that it's estimated, and I understand what the law is on that, the Court can rely on the PSR.
>
> But, secondly, the agreement between the parties that we had was that it was — the loss was not to exceed $400,000. And, again, I understand what the law is there on that point.
>
> I would ask the Court to find – to grant my objection. The net effect of my objection is to reduce his advisory guideline range all of one level, just simply because of where he stands with acceptance of responsibility. So, I would ask the Court to grant the objection.

---

obtained these profiles.

16. The case agent contacted several of the intended recipients and mailers who confirmed they never received their credit cards or checks. It was also determined several of the victims had their personal information used without their consent and/or knowledge.

17. Based on the above, the losses, both actual and intended, for which Shotonwa will be held accountable is approximately $464,560.19. (Document No. 31).

The Court:  All right.  Mr. Hileman, do you have problem with that?

Mr. Hileman:  No, I don't.  That was the recommendation I made in the plea agreement.  And it's – as the Court's aware, the total of the credit limits involved here are very close– are pretty close to $400,000.  And when the issue is intended loss, the defendant didn't actually get anywhere near that much and there's a strong argument to be made that he intended to get everything he could and was arrested.  Due to his cooperation and the fact that the loss amount is close to $400,000, I agreed to recommend less than $400,000 to give him the benefit of some doubt.

The Court:  All right.  Well, the probation officer's response is that a review of the case file material and discussions with the case agent, the probation officer maintains that the loss calculations presented to the Court are accurate.  The probation office is aware of the plea agreement's impact and noted such findings in Paragraph 69. However, the plea agreement in this case is not binding on the Court.

The probation officer agrees with the defense counsel in that the argument could be made that loss cannot be determined with any certainty and that these figures are merely an estimate.  However, based on Shotonwa's past and present conduct, it would appear that $464,590.19 is a conservative estimate of loss.  And I agree with that and so I'm going to overrule your objection, Mr. Cunningham.

I'm going to adopt the presentence report as my own, both the findings of fact, application of the guidelines to the facts.  I find a total offense level of 17, criminal history category of VI, which gives a guideline provision range of 51 to 63 months.

All right.  And I understand you have a motion for downward departure.  Can you tell me about that?

Mr. Hileman:  Yes, your Honor.  After Mr. Shotonwa was arrested, he confessed. Numerous items involving credit card fraud were found in his apartment.  And as the Court's aware, investigators showed up at his apartment to investigate a specific theft of credit cards from a facility in Atlanta.  They found other items.  So, they asked Mr. Shotonwa what the source of these other items were, the ones that weren't from Atlanta, and he was very frank with the investigators. He named the name of a postal letter carrier who had been providing him with this type of — these types of items. This mailman was stealing identity information from the mail.

As a result of Mr. Shotonwa's confession and naming of the letter carrier, an investigation was undertaken and has been completed and we do intend to charge the mailman in federal court with possession of stolen mail.  Now, he hasn't been charged as of this time, but he ---- probably next month we'll be able to get around to charging him, and I think that information is worth two points for Mr. Shotonwa.

10

The Court: All right. Mr. Cunningham, what is your position on this?

Mr. Cunningham: My position was certainly I have no objection to a 5K1.1 motion, and I appreciate the government making the recommendations that they are. So, I would ask the Court to use your discretion to depart downward to the extent you believe is appropriate and sentence him at the low range of the guideline that results from this. And that's because obviously with what's facing us on the second count, the identity theft count, that's a mandated cumulative stacked sentence, where you have the opportunity to stack other sentences on top of that with the supervised release violations, so....

The Court: Okay. Well, I have to – as you all know, I'm required to consider the guidelines. I'm also required to consider the statute and follow the statute and look at the big picture here. Given the nature of this crime and the nature of Mr. Shotonwa's previous crimes, it seems to me that a downward departure just for what he did, I'm not — I just don't believe he deserves a downward departure. So, I'm going to deny the government's motion for downward departure. (Transcript of Sentencing Hearing, Document No. 50, pp. 3-7).

Shotonwa was sentenced to a term of imprisonment of 96 months as to Count 2, which was to followed by a consecutive term of 24 months on Count 4, for a total term of imprisonment of 120 months, to be followed by a total three year term of supervised release (three years as to count 2 and one year term as to Count 4, the terms to be served concurrently). Shotonwa was also ordered to pay restitution of $43,946.84. (Document No. 34, Transcript of Sentencing Hearing, Document No. 50, pp. 9-12). With respect to Shotonwa's sentence, Judge Harmon stated:

The Court: All right. Larry David Shotonwa is before the Court as no stranger to the legal system. His criminal history consists of a state conviction for forgery in Hot Spring County, Arkansas; two credit card abuse convictions in Harris County, Texas; and pending cases for conduct similar to the instant offense in Middlesex County, New Jersey, and Queens, New York.

He has two prior federal convictions for uttering forged Treasury checks and possession of stolen mail. He's known to use alias names and dates of birth to avoid detection of his true criminal nature.

*              *

11

All right.  Mr. Shotonwa, has demonstrated his total disrespect for the laws of this country through his continuous criminal escapades.  Incarcerations and other rehabilitative efforts have failed to deter this defendant.  Based on his prior and continued criminal involvement, his behavior is more akin to offense level of 21 and a criminal history category of VI, for a guideline imprisonment range of 77 to 96 months.

I find that an upward departure from the guideline range is warranted in this case pursuant to United States Sentencing Guideline Section 4A1.3 for the reasons that were outlined in the presentence report, factors that may warrant departure.  His criminal history category of VI is an inadequate representation of the defendant's felonious conduct and the likelihood that he will commit future crimes.

I conclude that based upon the serious nature of his crimes, continued criminal conduct while on supervision, and illegally in – being illegally in the United States and the number of crimes similar in nature to the instant offense still pending, that an offense level of 21 found most adequately sanction the defendant's conduct.

At a criminal history category of VI and a total offense level of 21, the guideline imprisonment range is 77 to 96 months.  and I believe that a sentence at the highest end of the guideline range is warranted, as he appears to be an ongoing risk in the community based on failed attempts by state and federal authorities to deter future crime.  I believe this sentence is sufficient to meet the objectives of punishment, deterrence, and incapacitation.

Pursuant to the Sentencing Reform Act of 1984, it's the judgment of the Court that the defendant, Larry David Shotonwa, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 96 months as to Count 2, followed by a consecutive term of 24 months as to Count 4, for a total imprisonment term of 120 months.

After considering the comments to United States Sentencing Guidelines Section 5G1.3(c) and the policy statement set forth in United States Sentencing Guidelines Section 7B1.3(f) and Comment Note 4, revocation of probation or supervised release, the Court orders that the sentence for the instant offense will run consecutively to the term imposed for the violation of federal supervised release under Docket Nos. 4:CR00-114-001 and 4:Cr00-364-001.  (Document No. 50, pp. 7-9).

Judgment was entered on June 16, 2006. (Document No. 37).  Shotonwa appealed to the Fifth Circuit

Court of Appeals.  (Document No. 41).  On March 22, 2007, the Fifth Circuit dismissed Shotonwa's

appeal based on Shotonwa's appellate waiver. (Document Nos. 54, 55).  The docket sheet reveals

that Shotonwa filed a § 2255 motion (Document No. 56) and a Memorandum in Support (Document No. 58) on March 31, 2008.  In his § 2255 motion, Shotonwa  argues that his plea was unknowing and involuntary because his counsel gave improper advice during plea negotiations regarding the possible sentence he faced.  According to Shotonwa, counsel promised him a sentence of between 41 and 51 months, and Shotonwa had made it clear that his acceptance of the plea was dependent on a favorable sentence.  In addition, Shotonwa argues that he was not aware of the waiver provisions until after his sentence was imposed.  Shotonwa further argues that his counsel was ineffective because he failed to argue at sentencing that the sentence imposed was cruel and unusual, thereby violating the Eighth Amendment.  Shotonwa submitted an affidavit in support of his § 2255 motion and Memorandum in support, in which he avers:

> A.  My attorney promised me a sentence of approximately 51 months should I enter a guilty plea.  I made it clear that my acceptance of the plea hinged upon a favorable sentence.  I expressed concern that my guideline range of imprisonment was for between 51 and 63 months.
>
> B.  Had counsel been honest about the sentence that I was facing or the rights that I was waiving to challenge the sentence, I would not have entered into the plea at issue, but would have opted for a trial in order to exhibit my innocence.  At the very least, I would not have entered into an appeal waiver.  (Document No. 59).

The Government has answered and has moved to dismiss the instant action on the ground that Shotonwa, as part of his written Plea Agreement, waived the right to bring a motion under § 2255, and that his written Plea Agreement should be enforced.  (Document No. 64).  The Government further argues that even assuming that Shotonwa had not waived his right to pursue relief under § 2255, he nevertheless is not entitled relief, because the gist of Shotonwa's contentions relate to his counsel's actions with respect to the length of his sentence and are barred by the waiver.  The Government further argues that his claim, in any event, is without merit given that Shotonwa's

13

sentence was within the statutory range of punishment. (Document No. 64). Shotonwa has filed

a reply to the Government's Motion to Dismiss. (Document No. 65). This § 2255 proceeding is ripe

for ruling

.

## II. Discussion

### A. Wavier

A defendant's waiver of his statutory right to collaterally challenge his conviction with a

motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255, like a waiver by a defendant

of his right to appeal, is generally enforceable if the waiver is both knowing and voluntary. *United*

*States v. Wilkes,* 20 F.3d 651, 653 (5th Cir. 1994) (Enforcing defendant's voluntary and knowing

waiver of § 2255); *United States v. McKinney,* 406 F.3d 744, 746-47 & n.5 (5th Cir. 2005)

(Enforcing, post-*Booker*, a waiver of appeal right that was signed prior to the issuance of *Booker).*

Such waivers, however, do not "preclude review of a sentence that exceeds the statutory maximum."

*United States v. Hollins*, 97 Fed. Appx. 477, 479 (5th Cir. 2004). In the context of a plea agreement

waiver, a sentence exceeds the statutory maximum only when it exceeds the maximum allowed by

statute. *United States v. Bond*, 414 F.3d 542, 546 (5th Cir. 2005); *United States v. Cortez*, 413 F.3d

502, 503 (5th Cir.), *cert. denied*, 126 S.Ct. 502 (2005). In addition, when a defendant alleges that

his counsel was ineffective in negotiating a plea agreement, such ineffectiveness claims are not barred

by the waiver. *See United States v. White,* 307 F.3d 336, 343 (5th Cir. 2002) ("[i]neffective

assistance of counsel argument survives a waiver of appeal only when the claimed assistance directly

affected the validity of that waiver or the plea itself."); *United States v. Cockerham,* 237 F.3d 1179,

1187 (10th Cir. 2001) ("[W]e hold that a plea agreement waiver of postconviction rights does not

14

waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver.  Collateral attacks based on ineffective assistance of counsel claims that are characterized as falling outside that category are waivable."), *cert. denied*, 534 U.S. 1085 (2002); *DeRoo v. United States*, 223 F.3d 919, 924 (8th Cir. 2000) ("A defendant's plea agreement waiver of the right to seek section 2255 post-conviction relief does not waive defendant's right to argue, pursuant to that section, that the decision to enter into the plea was not knowing and voluntary because it was the result of ineffective assistance of counsel."); *Mason v. United States*, 211 F.3d 1065, 1069 (7th Cir. 2000) (where the ineffectiveness claims raised in a   § 2255 motion relate to counsel's performance at sentencing, the defendant's plea agreement waiver of this right to challenge his conviction in a § 2255 proceeding is enforceable), *cert. denied*, 531 U.S. 1175 (2001).[4] Ineffective assistance of counsel claims, including challenges to counsel's performance at sentencing, which do not relate to the validity of the Plea Agreement and waiver, can be waived.  *White,* 307 F.3d at 343.  Otherwise, "[i]f all ineffective assistance of counsel claims were immune from waiver, any complaint about the process could be brought in a collateral attack by merely challenging the attorney's failure to achieve the desired result.  A knowing and intelligent waiver should not be so easily evaded."  *White,* 307 F.3d at 344.

---

[4] There are some other limited situations in which a plea agreement waiver of the right to seek collateral review under § 2255 is not enforceable, such as where the sentence imposed violates the terms of the plea agreement, the sentence is illegal, or the Government has suppressed exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  *See DeRoo*, 223 F.3d at 923 ("defendants cannot waive their right to appeal an illegal sentence or a sentence imposed in violation of the terms of an agreement"); *United States v. Baramdyka*, 95 F.3d 840, 843 (9th Cir. 1996) ("the waiver of a right to appeal may be subject to certain exceptions such as claims involving a breach of the plea agreement, racial disparity in sentencing among codefendants or an illegal sentence imposed in excess of a maximum statutory penalty"), *cert. denied*, 520 U.S. 1132 (1997); *United States v. Hollins*, 97 Fed. Appx. 477, 479 (5th Cir. 2004) (Waiver does not preclude review of a sentence that exceeds the statutory maximum).  None of those circumstances is at issue in this proceeding.

Here, pursuant to a written Plea Agreement, Shotonwa waived his right to appeal and waived his right to collaterally attack his plea, conviction and sentence.  As discussed above, the written Plea Agreement was explicit with respect to the waiver of the right to appeal and to pursue collateral relief. (Document No.23, ¶ 11-14).

In addition, at his Rearraignment on September 16, 2005, the Court engaged in an extended colloquy to ensure that Shotonwa was competent to participate in the Rearraignment proceedings, had read the written Plea Agreement, discussed the contents of the written Plea Agreement with counsel and understood the agreement, that no promises had been made to induce his plea, that he understood the offense to which he was pleading guilty, the maximum sentence he faced on each count, namely a maximum term of imprisonment of ten years or 120 months on Count 2, and a mandatory consecutive term of two years or 24 months imprisonment on Count 4, the rights he was giving up by virtue of his guilty plea, and the factual basis of the charges and his guilty plea. The Court also advised Shotonwa about the waiver provisions.   Based on Shotonwa's responses during the lengthy colloquy, Judge Harmon concluded that Shotonwa's guilty plea and waiver of his right to appeal and collaterally attack his conviction and/or sentence was knowing and voluntary.

Given Shotonwa's statements on the record, which carry a strong presumption of verity, *Blackledge v. Allison,* 431 U.S. 63, 74 (1977), that he had read and discussed the written Plea Agreement with his counsel, that he understood the statutory and constitutional rights which he was waiving, that he understood his possible range of punishment and how his sentence would be computed, and that he understood that he had waived his right to appeal and to file a post conviction proceeding, as well as Judge Harmon's determination that Shotonwa's plea was knowing and voluntary,  Shotonwa has not shown that his plea was not counseled, knowing and voluntary, and

16

upon this record, Shotonwa's plea agreement waiver of his right to collaterally attack his conviction with a § 2255 motion is enforceable. Shotonwa's sentence does not exceed the statutory maximum – that is, the maximum sentence allowed by statute, *see* 18 U.S.C. § 2252A(a)(5)(B) (maximum term of ten years on Count two and mandatory consecutive terms of 25 months on Count four).   In addition, the Fifth Circuit has already determined that Shotonwa's waiver of his right to appeal is valid. (Document Nos. 54, 55).  Moreover, Shotonwa's ineffective assistance of counsel claims relate to counsel's performance at sentencing, and not to the validity of the Plea Agreement and waiver, and therefore are covered by the waiver.

Because Shotonwa's plea agreement, and waiver of appeal and collateral rights contained therein, were knowingly, voluntarily, and intelligently entered, because Shotonwa has waived his right to bring a § 2255 motion, and because that waiver is valid and should be enforced, it serves as a bar to the instant § 2255 motion.  Upon this record, the Government is entitled to summary judgment on Shotonwa's claims pursuant to Shotonwa's plea agreement waiver,[5]  *see  Mason v. United States*, 211 F.3d 1065, 1069 (7th Cir. 2000); *Davila*, 258 F.3d at 451-52; *United States v. Nguyen*, 2005 WL 14090 (E.D. La. 2005); *Morua v. United States*, 2005 WL 1745474 (S.D. Tex. 2005) (Hittner, J.); *United States v. Rohmfeld*, 2006 WL 126636 (S.D. Tex. 2006) (Jack, J.), and this § 2255 proceeding is subject to dismissal.

---

[5] Under Rule 12 of the Rules governing § 2255 motions, the Federal Rules of Civil Procedure, including Rule 56, which provides for summary judgment, are generally applicable. Under Rule 56(c), summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Here, because the evidence in the record shows that Shotonwa's plea was knowing and voluntary, there is no genuine issue of material fact relative to the validity of Shotonwa's guilty plea or his waiver of his direct appeal and waiver of pursuing collateral review under § 2255.  Summary judgment is therefore warranted on Shotonwa's plea agreement waivers.

### B. Merits

Even if Shotenwa's waivers were not enforceable, the record supports the conclusion that no relief is available to Shotonwa on the merits of his ineffective assistance of counsel claims. Claims of ineffective assistance of counsel are generally measured by the standard of *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Strickland*, 466 U.S. at 687. Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id.* at 687-88. The prejudice element requires a petitioner to prove that absent the disputed conduct of counsel, the outcome would have been both different and more favorable. *Id.* at 694-95. Under *Strickland*, a petitioner must establish both deficiency and prejudice prongs to be entitled to habeas relief. The failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong. *United States v. Seyfert,* 67 F.3d 544, 547 (5th Cir. 1995).

Under the deficiency prong of *Strickland*, judicial scrutiny of counsel's performance is "highly deferential" and "a strong presumption" is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1064-65 (5th Cir. 1992), *cert. denied,* 509 U.S. 921 (1993) (citing *Strickland*). To overcome the presumption of competence, the petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Under the prejudice prong of *Strickland,* a petitioner must be able to establish that absent his counsel's deficient performance, the result of his trial could have been different. "An error

18

by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel. The determination of whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record. Each case is judged in light of the number, nature, and seriousness of the charges against a defendant, the strength of the case against him, and the strength and complexity of his possible defense. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied,* 467 U.S. 1220 (1984). The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct. *Strickland,* 466 U.S. at 690. "We will not find inadequate representation merely because, with the benefit of hindsight, we disagree with counsel's strategic choices." *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999) (quoting *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997)). The court's role "under § 2255 is not to audit decisions that are within the bounds of professional prudence." *United States v. Molina-Uribe*, 429 F.3d. 514, 518 (5th Cir. 2005), *cert. denied*, (2006). In addition, conclusory allegations of ineffective assistance of counsel do not raise a constitutional question in a federal habeas petition. *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir. 2000), *cert. denied*, 531 U.S. 849 (2000) (citing *Barnard v. Collins,* 958 F.2d 634, 642 (5th Cir. 1992); *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

With respect to guilty pleas, the prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Thus, Shotonwa "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* The specific example of counsel's ineffective assistance, which Shotonwa cites to in support of

ineffectiveness claim, that counsel promised a sentence of 51 months, is controverted by the record. The record shows that written Plea Agreement at ¶ 14, clearly states that no sentence had been determined and that any estimate by counsel was a prediction not a *promise*.  In addition, the written Plea Agreement explicitly stated that the "Court has jurisdiction and authority to impose *any* sentence within the statutory maximum set for the offense to which defendant pleads guilty." (Document No. 23, ¶ 12) (emphasis added).   The record further shows that Shotonwa was advised by Judge Harmon about his waivers, and the calculation of his sentence at his Rearraignment hearing.  Judge Harmon stated that she would not be in a position to know definitively what Shotonwa's sentence would be *until* the sentencing hearing.  Judge Harmon further stated that the Court was not bound by the written Plea Agreement, and could depart, upward or downward, from the advisory guideline range[6]. The record affirmatively shows that Shotonwa's counsel was not deficient and there is no evidence that any alleged error prejudiced Shotonwa within the meaning of *Strickland*.   In conclusion, Shotonwa has offered no proof as to how his counsel's performance was objectively deficient, and no proof that such deficient performance prejudiced him in any way.  *See Strickland,* 466 U.S. at 687. Therefore, no relief is available under § 2255 on the ineffective assistance of counsel claim.

## IV.  Conclusion and Recommendation

---

[6] To the extent that Shotonwa challenges the calculation of his sentence, the court's technical application of the sentencing guidelines does not give rise to a constitutional claim cognizable under § 2255.  *United States v. Segler*, 37 F.3d 1131, 1134 (5th Cir. 1994); *United States v. Faubion*, 19 F.3d 226, 232-22 (5th Cir. 1994).  As such, no relief would be available on this claim.

Based on the foregoing, and the conclusion that Shotonwa's guilty plea was knowing and voluntary and that his waiver of his right to collaterally attack his conviction should be enforced, and further given that no relief is available to Shotonwa on the merit of his claims, it is

RECOMMENDED that the Government's Motion to Dismiss (Document No. 64) be GRANTED, that Movant Shotonwa's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 56) be DENIED, and that this § 2255 proceeding be DISMISSED with prejudice.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.  Within 10 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the ten day period bars an aggrieved party from attacking conclusions of law on appeal.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this  4th day of  September, 2008.

Frances H. Stacy
United States Magistrate Judge